IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**ORIGINAL**

| | |
|---|---|
| ROBERT CHRISTIAN WOLF | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| JOHN BENNETT RAMSEY & | ) |
| PATRICIA PAUGH RAMSEY | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION FILE

NO. 00-CIV-1187(JEC)

### DEFENDANTS' INITIAL DISCLOSURES

NOW COME Defendants John Bennett Ramsey and Patricia Paugh Ramsey (collectively, "Defendants" or "the Ramseys") pursuant to Local Rule 26.1, NDGa, and submit the following initial disclosures:

**(1)** If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.

**Response:**

**Defendants are properly identified.**

**(2)** Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff. If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention.

**Response:**

**None.**

**(3)** Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading.

**Response:**

This is an action for libel, slander and intentional infliction of emotional distress arising from the defendants' authorship of a book regarding the December 1996 murder of JonBenét Ramsey in Boulder, Colorado.  Defendants John and Patricia ("Patsy") Ramsey are the parents of JonBenét Ramsey.

Plaintiff's Amended Complaint claims that the Ramseys made certain libelous statements in their book The Death of Innocence: The Untold Story of JonBenét's Murder and How Its Exploitation Compromised the Pursuit of Truth (the "Book") and on the March 24, 2000 broadcast of NBC's the "Today Show" intended to create the impression that others, including Plaintiff, should be investigated in the death of JonBenét Ramsey.  Plaintiff claims that this impression is false and defamatory.  The Amended Complaint alleges that Patsy Ramsey murdered her child, her husband John helped cover it up, and the Ramseys therefore could not subjectively believe that Plaintiff is a legitimate suspect in JonBenét's death.  Plaintiff also asserts a claim for intentional infliction of emotional distress, alleging the Ramseys caused private investigators to implicate Plaintiff in the murder despite knowledge that Plaintiff was not involved.  Plaintiff also

claims that Patsy Ramsey wrote the kidnap ransom note found in the Ramsey home on December 26, 1996.

Defendants deny these allegations. Neither Patsy nor John Ramsey killed their daughter, neither knows the identity of the killer, and neither wrote the kidnap ransom note found in the Ramsey home. Abundant evidence supports the conclusion that JonBenet Ramsey was murdered by an intruder. The alleged "evidence" concerning the ransom note offered by Plaintiff is inadmissible, inconsistent, inconclusive and contradicts abundant evidence demonstrating that Patsy Ramsey did not, or in the view of qualified experts, probably did not, write the ransom note.

The Ramseys' book The Death of Innocence is true. The identified statements published in the Book, and made on NBC's "The Today Show," are non-actionable opinion and, to the extent they are not opinion or otherwise privileged, they are truthful and not defamatory. In both the Book and on the "Today Show," Plaintiff was portrayed by the Ramseys merely as one of numerous possible leads in the search for the murderer of JonBenét Ramsey, and not as a murderer. This portrayal was true. Indeed, Plaintiff has voluntarily spoken on national television about his experiences as a police suspect in connection with the death of JonBenét Ramsey.

Neither Patsy nor John Ramsey sought to direct suspicion away from herself or himself.  After JonBenét Ramsey was murdered by an intruder, or intruders, who is or are still at large, the Ramseys sought to learn information and evidence which might serve to bring the guilty party or parties to justice and to prepare a defense to possible criminal charges being brought against them, however unfounded.  The Ramseys' hiring of private investigators was in lawful pursuit of these objectives, and the Ramseys did not direct the investigators to intentionally focus their attention on Plaintiff.

(4)  Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which defendant contends are applicable to this action.

**Response:**

1.  **New York Times v. Sullivan**, 376 U.S. 254 (1964);

2.  **Greenbelt Cooperative Publishing Assoc. v. Bresler**, 398 U.S. 6 (1970);

3.  **Gertz v. Robert Welch, Inc.**, 418 U.S. 323 (1974);

4.  **Milkovich v. Lorain Journal Co.**, 497 U.S. 1 (1990);

5.  **Hustler Magazine v. Falwell**, 485 U.S. 46 (1988);

6.  **Keller v. Miami Herald Publishing Co.**, 778 F.2d 711, 716 (11th Cir. 1985);

7.  **Raymen v. Doubleday Co., Inc.**, 615 F.2d 241 (5th Cir. 1980);

8.  **S&W Seafoods Co. v. Jacor Broadcasting of Atlanta**, 194 Ga. App. 233, 390 S.E.2d 228 (1989);

9.  **Bergen v. Martindale-Hubbell, Inc.**, 176 Ga. App. 745, 337 S.E.2d 770 (1985);

10. <u>Harcrow v. Struhar</u>, 202 Ga. App. 587, 415 S.E.2d 16 (1992);

11. <u>Mead v. True Citizen, Inc.</u>, 203 Ga. App. 361, 417 S.E.2d 16 (1992);

12. <u>Purvis v. Ballantine</u>, 226 Ga.App. 246, 487 S.E.2d 14 (1997);

13. <u>Byers v. Southeastern Newspaper Corp., Inc.</u>, 161 Ga.App. 717, 288 S.E.2d 698 (1982);

14. <u>**Savannah News-Press v. Whetsell**</u>, 149 Ga.App. 233, 254 S.E.2d 151 (1979);

15. O.C.G.A. § 51-5-1;

16. O.C.G.A. § 51-5-11.

**(5)**  Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information. (Attach witness list to Responses to Initial Disclosures as Attachment A.)

**<u>Response:</u>**

**See Attachment A.**

**(6)**  Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.  For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)

**<u>Response:</u>**

**At this time, Defendants have not retained an expert witness to testify at trial.  Defendants will supplement and amend this response to Disclosure No. 6 when appropriate.**

**(7)**  Provide a copy or description by category and location of all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the



pleadings.  (Attach document list and descriptions to Responses
to Initial Disclosures as Attachment C.)

**Response:**

    **See Attachment C.**

    **(8)** In the space provided below, provide a computation of
any category of damages claimed by you.  In addition, include a
copy or description by category and location of the documents
or other evidentiary material, not privileged or protected from
disclosure, on which such computation is based, including
materials bearing on the nature and extent of injuries
suffered, making such documents or evidentiary material
available for inspection and copying under Fed.R.Civ.P. 34.
(Attach any copies and descriptions to Responses to Initial
Disclosures as Attachment D.)

**Response:**

    **Defendants have not claimed damages.**

    **(9)** If defendant contends that some other person or legal
entity is, in whole or in part, liable to the plaintiff or
defendant in this matter, state the full name, address, and
telephone number of such person or entity and describe in
detail the basis of such liability.

**Response:**

    **Defendants do not so contend.**

    **(10)** Attach for inspection and copying as under
Fed.R.Civ.P. 34 any insurance agreement under which any person
carrying on an insurance business may be liable to satisfy part
or all of a judgment which may be entered in this action or to
indemnify or reimburse for payments to satisfy the judgment.
(Attach copy of insurance agreement to Responses to Mandatory
Disclosures as Attachment E.)

**Response:**

    **See Attachment E.**

This ___ day of May, 2001.

_____
James C. Rawls
Georgia Bar No. 596050
Eric P. Schroeder
Georgia Bar No. 629880
S. Derek Bauer
Georgia Bar No. 042537

POWELL, GOLDSTEIN, FRAZER & MURPHY LLP
Sixteenth Floor
191 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 572-6600
FAX: (404) 572-6999

_____
L. Lin Wood
Georgia Bar No. 774588

The Equitable Building
Suite 2140
100 Peachtree Street
Atlanta, Georgia  30303
(404) 522-1713

Attorneys for Defendants

::ODMA\PCDOCS\ATL\472426\1



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ROBERT CHRISTIAN WOLF | ) | |
| | ) | |
| Plaintiff. | ) | CIVIL ACTION FILE |
| vs. | ) | |
| | ) | NO. 00-CIV-1187(JEC) |
| JOHN BENNETT RAMSEY & | ) | |
| PATRICIA PAUGH RAMSEY | ) | |
| | ) | |
| Defendants. | ) | |

**ATTACHMENT A**

## DEFENDANTS' LIST OF INDIVIDUALS WITH DISCOVERABLE INFORMATION

Defendants are currently aware of the following individuals

who are likely to have discoverable information relevant to

disputed facts alleged with particularity in the pleadings.

**Defendants:**

John Ramsey and Patsy Ramsey
Address:     Withheld for privacy concerns (will be disclosed to
             Plaintiff under protective order of confidentiality)
Telephone:   Withheld for privacy concerns (will be disclosed to
             Plaintiff under protective order of confidentiality)
Subject:     Falsity; damages; all matters described in the books

**Plaintiff:**

Robert Christian Wolf (address known to Plaintiff)

**Relatives and Friends of Plaintiff Robert Christian Wolf, including:**

Bo Wolf, Judy Wolf, Wendy Wolf, Chris Walker (addresses known to
Plaintiff)



Current And Former Employees Of The Boulder Police Department, including:

Chief Mark Beckner, former Chief Tom Koby, Steve Thomas, Don Davis, Robert Keatley, Linda Arndt, Joe Pelle, Tom Kirkpatrick, David Hayes, Molly Bernard, John Eller, James Byfield, Michael Everett, Richard French, Ronald Gosage, Jane Harmer, Melissa Hickman, Greg Idler, Larry Mason, Fred Patterson, Paul Reichenbach, Kim Stewart, Thomas Trujillo, Karl Veitch, Carey Weinheimer, Barry Weiss, Robert Whitson, Thomas Wickman, Kerry Yamaguchi, Jeff Kithcart, Al Alvarado, Leslie Aaholm, Mary Lou Jeramus, Grace Morlock, Officer Haukeness, Officer Schunk, Officer Joy, Officer Kolar, Officer Ross, Officer Ready, Officer Finn, Officer Sears, Officer Ramos, Officer Aguilar, Officer Riggs, Officer Humphrey

Address:     1805 33rd St., Boulder, CO
Telephone:   303-441-3300

Subject:     Investigation of the murder of JonBenét Ramsey, matters described in the books

## Boulder Police Department Consultants and Advisors, including

Tom Haney, Retired Denver Police Department
Address:     Denver CO
Subject:     Investigation of the murder of JonBenét Ramsey, matters described in the books

Steven Pitt, advised BPD on psychological techniques to use against Ramseys
Address:     Phoenix AR
Subject:     Investigation of the murder of JonBenét Ramsey, matters described in the books

Richard N. Baer
Sherman & Howard
Address:     633 Seventeenth Street, Denver CO
Telephone:   303-297-2900
Subject:     Investigation of the murder of JonBenét Ramsey, matters described in the books

Daniel S. Hoffman
Hoffman Reilly Pozner & Williamson
Address:     511 Sixteenth Street, Denver CO
Telephone:   303-893-6100
Subject:     Investigation of the murder of JonBenét Ramsey, matters described in the books

2

Marilyn Van DeBur
Address:     Denver CO
Subject:     Investigation of the murder of JonBenet Ramsey,
             matters described in the books

Donald Foster
Address:     Vassar College, Poughkeepsie NY
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Robert D. Kullman, Speckin Forensic Laboratories
Address:     2105 University Park Drive, Okemos, MI
Telephone:   517- 349-3528
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Dr. Werner Spitz
Address:     Unknown
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Cyril Wecht, Ex- Allegheny County Coroner, County Commissioner
Address:     Pittsburgh PA
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Thomas Miller
Address:     1026 Lincoln Place, Boulder CO 80302
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Judith Phillips
Address:     1026 Lincoln Place, Boulder CO 80302
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

**City of Boulder Officials, including:**

Bob Greenlee, Mayor-City of Boulder-1997-2000
Address:     1777 Broadway, Boulder CO 80302
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Leslie Durgin, Boulder Mayor 1996-1997
Address: 345 17th St., Boulder CO 80302
Subject: Investigation of the murder of JonBenét Ramsey, matters
         described in the books

3

Tim Honey, City Manager- City of Boulder-until 1998
Address:     1777 Broadway, Boulder CO 80302
Subject:     Investigation of the murder of JonBenér Ramsey,
             matters described in the books

Ron Secrist, City Manager- City of Boulder-current
Address:     1777 Broadway, Boulder CO 80302
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

**Boulder County Officials And Consultants, including :**

Dr. John Meyer, Coroner
Address:     Boulder CO
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Alex Hunter, Peter Hofstrom, Laurence DeMuth III, Mary Keenan,
Bill Wise, Suzanne Laurion, Boulder County District Attorney's
Office
Address:     Justice Center, 1777 Sixth Street, Boulder, CO 80302
Telephone:   303/441-3700
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Michael Kane, Special Prosecutor, District Attorney's Office
Address:     Kane and Mackin, LLP, 3300 Trindle Road,
             Camp Hill, PA 17011-4432
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Daniel Schuler, Broomfield Police Department
Address:     1 Descombes Dr, Broomfield CO
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Judge Murray Richtel
Address:     Boulder Justice Center, Boulder CO 80302
Subject:     Falsity; investigation of the murder of JonBenét
             Ramsey, all matters described in the books

Judge Roxanne Bailin
Address:     Boulder Justice Center, Boulder CO 80302
Subject:     Investigation of the murder of JonBenét Ramsey,
             matters described in the books

Sheriff George Epp, Steve Ainsworth, Boulder County Sheriff's
Department
Address:    1777 6th St Boulder CO 80302
Subject:    Investigation of the murder of JonBenét Ramsey,
matters described in the books

Lou Smit
Address:    303 N. 23rd St., Colorado Springs, CO 80904
Telephone:  719-633-5178
Subject:    Investigation of the murder of JonBenét Ramsey,
matters described in the books

Bob Grant, Bruce Levin, Adams County District Attorney's Office
Address:    450 South 4th Avenue, Brighton CO 80601
Subject:    Investigation of the murder of JonBenét Ramsey,
matters described in the books

Bill Ritter, Mitch Morrissey, Denver District Attorney's Office
Address:    1437 Bannock St, Denver CO
Subject:    Investigation of the murder of JonBenét Ramsey,
matters described in the books

Jim Peters, Arapahoe County District Attorney
Subject:    Investigation of the murder of JonBenét Ramsey,
matters described in the books

Dave Thomas, Jefferson County District Attorney
Address:    500 Jefferson County Parkway, Golden CO 80401
Subject:    Investigation of the murder of JonBenét Ramsey,
matters described in the books

**Members Of The Boulder, Colorado Grand Jury That Investigated
The Murder Of JonBenét Ramsey:**

James Plese                Boulder, CO
Loretta Resnikoff          Boulder, CO
Tracey Vallad              Longmont, CO
Michelle Czopek            Superior, CO
Susan LeFever              Boulder, CO
Elizabeth Annecharico      Boulder, CO
Barbara McGrath-Arnold     Boulder, CO
Frances Diekman            Longmont, CO
Josephine Hampton          Lafayette, CO
Jonathan Webb              Louisville, CO
Martin Pierce              Longmont, CO
Martin W. Kordas, Jr.      Lafayette, CO
Theresa Van Fossen         Broomfield, CO
Marcia Richardson          Boulder, CO

Janice McCallister        Longmont, CO
Polly Palmer              Niwot, CO
Morton Wegman-French       Boulder, CO

Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books


Henry Lee
Address:    300 Orange Avenue, West Haven CT 06516
Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books


Barry Scheck
Address:    NY
Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books


**Other Law Enforcement and Government Officials:**


William Hagmaier, FBI Child Abduction & Serial Killer Unit
Quantico VA
Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books


Ron Walker, FBI-Denver Office
Denver CO
Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books


Carl Whiteside. Chet Ubowski, Pete Mang, Susan Kitchen, Colorado
Bureau of Investigation
Littleton CO
Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books


Edwin F. Alford, Jr.
Miller, Hargett & Alford
Examiners of Questioned Documents
Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books


Richard Dusak
Document Analyst, U.S. Secret Service
Subject:    Investigation of the murder of JonBenét Ramsey,
            matters described in the books

Gov. Bill Owens, Governor of Colorado
Denver CO 80203
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Mary Maltalesta, Colorado Attorney General's Office
Denver CO
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Gov. Roy Romer, Former Governor of Colorado
Angeles CA
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Ken Salazar,
Colorado Attorney General
Denver CO
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Roy Palmer, Gov. Owens' Chief of Staff
Denver CO 80203
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Anthony Vollack, Former Colorado Supreme Court Justice
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Troy Eid, Gov. Owens' Chief Legal Counsel
Denver CO 80203
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Jeanne Smith, El Paso/Teller Counties District Attorney
Colorado Springs CO
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Stuart Van Meveren, Fort Collins District Attorney
Fort Collins CO
Subject:    Investigation  of  the  murder  of  JonBenét  Ramsey,
            matters described in the books


Michael Doberson, M.D., Ph.D., Forensic Pathologist
Littleton, CO 80120-1200

7

Gus Sandstrom, Pueblo District Attorney
Pueblo CO
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books

Don Quick, Deputy Colorado Attorney General for Criminal Justice
Denver CO
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books

John Lang, Ralph Stone, Georgia Bureau of Investigation
Atlanta GA
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books

**Ramsey Family Attorneys and their Consultants:**

G. Bryan Morgan, Harold A. Haddon
Address:      Haddon, Morgan & Foreman, P.C., 150 East Tenth
              Avenue, Denver, Colorado 80203
Telephone:    303-831-7364
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books; damages

Patrick Furman
Address:      University of Colorado Law School, Boulder CO 80303
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books; damages

Patrick J. Burke
Address:      Burke & Neuwirth P.C., 1800 15th Street, Suite 105,
              Denver, Colorado 80202
Telephone:    303-825-3050
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books; damages

Ollie Gray, John SanAgustin, Integrated Network, Inc.
Address:      4230 Bromley Place, Colorado Springs CO 80906
Telephone:    719-527-1474
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books; damages

Lloyd Cunningham, Howard C. Rile Jr.
Address:      100 Oceangate Suite 670, Long Beach CA 90802-4312
Telephone:    562-901-3376
Subject:      Investigation  of  the  murder  of  JonBenét  Ramsey,
              matters described in the books

8

J. Donald Vacca
Address:      R.D. Vacca Inc., 1404 Belford Ct.,
              Evergreen CO 80439
Telephone:    303-674-1719
Subject:      Investigation of the murder of JonBenét Ramsey,
              matters described in the books

John E. Douglas
Address:      Virginia
Telephone:    540-899-0042
Subject:      Investigation of the murder of JonBenét Ramsey,
              matters described in the books

John Hornbeck
Address:      67390 Peterson Mill Road, Sisters, Oregon 97759

H. Ellis Armistead
Jennifer Gedde
Nancy D'Amico
Vincent Calderon
Alberteen V. Ransom
Lisa M. Kanne
Marty Sutton

Address:      H Ellis Armistead & Associates
              1905 Sherman St, Denver CO 80203

R. Jon Foster
Address:      Foster Private Investigations
              6732 W. Coal Mine Avenue, Littleton CO 80123

Gene A. Matthews
Address:      682 Doe Lane, Loganville GA 30052

David L. Williams
Ella Mae Williams
Wendy L. Denison

Address:      Williams Private Investigations
              150 East Tenth Avenue, Denver CO 80290

Richard Fox
Address:      P. O. Box 6791, Ventura, California 93006

Katherine S. Jens, Ph.D.
Licensed Clinical Psychologist
Address:      8000 E. Prentice Avenue, Englewood, California 80111

Margaret McHugh, M.D.
Address:    1000 Clove Road, Staten Island, NY 10301

Gerald R. McMenamin, Ph.D.
Forensic Linguistics
Address:    409 West Audubon Drive, Fresno, California 93711

Richard W. Sanders
University of Colorado at Denver

Kris Sperry, M.D.
Chief Medical Examiner
GBI
Address:    P. 0. Box 370808, Decatur, Georgia 30057

Mr. Cleve Backster
The Backster Research Foundation
Address:    861 Sixth Avenue, San Diego, CA 90010

Dr. Edward I. Gelb
Intercept, Inc.
Address:    4201 Wilshire Boulevard, Los Angeles, CA 90010

Mr. Gerard M. Toriello
Investigative Research, Inc.
Address:    1030 Route 46 West,    Clifton, NJ 07013

## Ramsey Family and Friends:

John Andrew Ramsey
Address:    Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Telephone:  Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

Melinda and Stewart Long
Address:    Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Telephone:  Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

Don Paugh
Address:       Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Telephone:     Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Subject:       Matters described in the books

Jeff and Peggy Ramsey
Address:       Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Telephone:     Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Subject:       Matters described in the books

Paulette and Grant Davis
Address:       Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Telephone:     Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Subject:       Matters described in the books

Pamela Paugh
Address:       Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Telephone:     Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Subject:       Matters described in the books

Lucinda Johnson
Address:       Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Telephone:     Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Subject:       Matters described in the books

Susan and Glen Stine
Address:       5760 Long Grove, Atlanta GA 30328
Telephone:     Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Subject:       Matters described in the books

Roxy and Stuart Walker
Address:       1045 Lincoln Place, Boulder CO 80302
Telephone:     Withheld for privacy concerns (will be disclosed to
               Plaintiff under protective order of confidentiality)
Subject:       Matters described in the books

Father Rol Hoverstock
Address:    St. John's Church, Boulder, CO 80302
Subject:    Matters described in the books

Nathan Inouye
Address:    Kingston Jamaica
Subject:    Matters described in the books

Penni Beuf
Address:    Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

Francesca Beuf, M.D.
Adress:     Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

Linda Edison McLean
Address:    Parkersburg WV
Subject:    Matters described in the books

Margaret Harrington
Address:    Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

Barbara Kostanick
Address:    Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Telephone:  Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

Donna Hatterick
Address:    Atlanta GA
Telephone:  Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

Regina Orlick
Address:    Atlanta GA
Telephone:  Withheld for privacy concerns (will be disclosed to
            Plaintiff under protective order of confidentiality)
Subject:    Matters described in the books

**Others:**

John and Barbara Fernie
Address:    1950 Tin Cup Ct
            Boulder CO 80303
Subject:    Matters described in the books

Jacqueline Dilson
Address:    Saratoga, Wyoming
Telephone:  307-326-5989
Subject:    Status of Plaintiff as suspect

Marah Dilson
Address:    Unknown
Subject:    Status of Plaintiff as suspect

Mason and Ellen Yaffee
Address:    Unknown
Subject:    Status of Plaintiff as suspect

Barbara Harvey
Address:    Colorado
Subject:    Status of Plaintiff as suspect

Ricky Easley
Address:    Unknown
Subject:    Status of Plaintiff as suspect

Fleet and Priscilla White
Address:    Cleveland Circle, Boulder CO 80302
Telephone:  303-440-4571
Subject:    Matters described in the books

Carol McKinley
Address:    Fox News, Denver, Colorado
Telephone:  303-383-1170
Subject:    Matters described in the books, Plaintiff's status
            as suspect

Lawrence Schiller
Address:    California
Telephone:  800-835-7853
Subject:    Matters described in the books, Plaintiff's status
            as suspect

13

Susan Bennett
Address:      Hickory NC
Telephone:    828-324-2989
Subject:      Matters described in the books

Lisa Ryckman
Address:      Denver CO
Telephone:    303-892-2736
Subject:      Investigation of the murder of JonBenét Ramsey,
              matters described in the books

Jeff Shapiro
Address:      NY
Subject:      Investigation of the murder of JonBenét Ramsey,
              matters described in the books

Frank Coffman
Address:      Boulder CO
Subject:      Investigation of the murder of JonBenét Ramsey,
              matters described in the books

Daniel Glick
Address:      NEWSWEEK, Denver, Colorado
Telephone:    303-543-9086
Subject:      Investigation of the murder of JonBenét Ramsey,
              matters described in the books, suspicions
              concerning Plaintiff Wolf

Linda Hoffmann-Pugh
Address:      Ft. Lupton CO
Subject:      Matters described in the books

Mervin Pugh
Address:      Ft. Lupton CO
Subject:      Matters described in the books

Bill and Janet McReynolds
Address:      Unknown
Subject:      Matters described in the books

**The authors, editors, contributors and all individuals
identified in the following books published about the JonBenét
Ramsey murder:**

   Schiller, _Perfect Murder, Perfect Town_ (hardback)

   Douglas-Olshaker, _The Cases That Haunt Us_



Thomas, Inside the Ramsey Investigation (paperback)

Hodges, Mother Gone Bad

Schiller, Perfect Murder, Perfect Town (paperback)

Singular, Presumed Guilty

Wecht-Bosworth, Who Killed JonBenét?

Thomas, Inside the Ramsey Investigation (hardback)

Wallington-Von Duyke, A Little Girl's Dream?

McLean, JonBenét's Mother

Smith, Death of a Little Princess

Hodges, Who Will Speak for JonBenét?

Stobie, JonBenét's Gift

Rubacher, JonBenét Knows Evil Love

**Any and all individuals identified in the book at issue (not otherwise included in this Attachment).**

Defendants reserve the right to supplement or amend this disclosure as appropiate.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ROBERT CHRISTIAN WOLF | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| vs. | ) | |
| | ) | NO. 00-CIV-1187(JEC) |
| JOHN BENNETT RAMSEY & | ) | |
| PATRICIA PAUGH RAMSEY | ) | |
| | ) | |
| Defendants. | ) | |

**ATTACHMENT C**

**DEFENDANTS' LIST OF DOCUMENTS**

Defendants are currently aware of the following documents in their possession which may be relevant to "disputed facts alleged with particularity in the pleadings." Defendants reserve the right to assert a claim of privilege and to withhold from production any documents whether or not included in the description below that are protected from discovery by the attorney-client privilege, attorney work product privilege, or any other privilege.

   (1)   Hardback and paperback copies of The Death Of
         Innocence;

   (2)   Handwriting exemplars of Defendant Patsy Ramsey
         provided to Boulder law enforcement authorities;

1

(3)  A copy of the ransom note found in Defendants' home
     on the morning of December 26, 1996;

(4)  A copy of the June 18, 1997 letter authored by Don
     Foster to Patsy Ramsey;

(5)  Transcripts of August 2000 interview of Jacqueline
     Dilson;

(6)  Transcripts of interviews of Defendants by Boulder
     Police officers in April 1997 and August 2000;

(7)  Videotapes of interviews of Defendants by Boulder
     Police officers in August 2000;

(8)  Videotapes of interviews of Defendants by Boulder
     District Attorney's office in June 1998.

(9)  Photographs of crime scene;

(10) Various books, articles, transcripts, written
     publications and videotapes discussing the murder of
     JonBenét Ramsey;

(11) Pleadings and other materials related to the
     following civil lawsuit:  *Linda Hoffman-Pugh v.
     Patricia Ramsey and John Ramsey*, Civil Action File
     No. 1:01 CV-0630 (N.D. Ga. 2001);

(12) Copies of police reports provided to Defendants
     before April 1997 police interviews of Defendants;

 

(13) File of unprivileged documents held by counsel regarding Plaintiff Robert Christian Wolf and the investigation into the murder of JonBenet Ramsey;

(14) File of unprivileged documents held by counsel regarding Plaintiff's counsel Darnay Hoffman and the investigation into the murder of JonBenét Ramsey;

(15) Various photographs of Plaintiff Wolf;

(16) Copy of <u>A Little Girl's Dream?</u>, by Eleanor Van Duyke with Dwight Wallington; and

(17) Copy of <u>Perfect Murder, Perfect Town</u>, by Lawrence Schiller.


Copies of these documents are located at the law offices of L. Lin Wood, P.C., Suite 2140, The Equitable Building, 100 Peachtree Street, Atlanta, Georgia 30303.

Defendants reserve the right to supplement or amend this disclosure response as appropriate.

# NATIONAL CASUALTY COMPANY
Property/Casualty Division
8877 _ ch Gainey Center Drive - Scottsdale, Ari.. ..a 85258
A Stock Company
(800) 423-7675

LS 011424
**Policy No**

LS 009661
**Renewal of**

CLAIM EXPENSE IS INCLUDED IN THE POLICY LIMIT AND SELF-INSURED RETENTION. PLEASE READ YOUR POLICY CAREFULLY.

*Media Special*
*Perils Policy*
*Declarations*

1. **Named Insured** and Address (Number, Street, Town, County, State, ZIP Code)
    Thomas Nelson, Inc. & Subsidiaries
    501 Nelson Place
    Nashville, Tennessee  37214

2. Policy Period: From ____April 1, 1999____ To ____April 1, 2000____
    12:01 A.M. standard time at the address of the **Named Insured** as shown above.

3. All words or phrases (other than captions) printed in boldface are defined in the policy.

4. Policy Limit:
    $  Not Applicable   Any One Policy Period
        or
    $  5,000,000   **Each Loss**

5. Self-Insured
    Retention:   $   75,000   **Each Loss**

6. Annual Premium:   $  77,500.00   Minimum Premium:  $   .00   (Retained)

    State Surcharge/Tax:   $  Not Applicable

7. Schedule:
    Blanket for "scheduled media" as defined in the policy.

8. Coverage Forms:   Multimedia Coverage (CEWL) - LS 00 13 (3-93)

    Endorsements and other forms attached to the policy:
    1. Tennessee Cancellation & Nonrenewal Provisions - SX-11 4/92
    2. Amendatory Endorsement
    3. Additional Insured Endorsement - Form LS 20 08 (3-93)
    4. Removal of Aggregate - Multimedia (CEWL) - LS 70 11 (3-93)
    5. Additional Insured Endorsement - Form LS 20 08 (3-93)
    6. Automatic Acquisition Endorsement
    7. Merchandising Rights Endorsement
    8. E&O Broad Form Coverage Endt With Exclusions (CEWL) - LS 10 61 (10-98)

All notices and inquiries should be addressed to:
    Media/Professional Insurance
    2300 Main Street, Suite 800
    Kansas City, Missouri  64108

_____
Authorized Representative

LSN-D-2 (3-93)

ATTACHMENT F    24507

# National Casualty Company

# MEDIA SPECIAL PERILS POLICY
# MULTIMEDIA COVERAGE

### (Claim Expense Within the Policy Limit)

### IMPORTANT NOTICE

**CLAIM EXPENSE** IS INCLUDED IN THE POLICY LIMIT AND THE SELF-INSURED RETENTION.

ALL WORDS OR PHRASES, OTHER THAN CAPTIONS, PRINTED IN BOLD FACE ARE DEFINED IN THE POLICY.

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

In consideration of the payment of the premium and in reliance on the statements in the Declarations and subject to all other terms of this policy, the Company designated in the Declarations agrees with the **Insured** named in the Declarations to the following:

## I.   COVERAGE AGREEMENTS

The Company shall pay on behalf of the **Insured all damages** and **claim expense** in excess of the Self-Insured Retention and within the Policy Limit which the **Insured** becomes legally obligated to pay because of liability imposed by law or **assumed under contract** as a result of one or more **claims** arising out of:

### A.   Media Liability

1. any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous conduct;

2. any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

3. infringement of title, slogan, trademark, trade name, trade dress, service mark or service name;

4. infringement of copyright, plagiarism, piracy or misappropriation of ideas under implied contract;

5. **unfair competition** but only when alleged in conjunction with the types of **claims** named in 3 and 4 above;

committed in the utterance or dissemination of **matter** by or with permission of the **Insured** during the Policy Period in **multimedia activities** and related **advertising**, regardless of when **claim** is made or suit is brought.

### B.   Limited Personal Injury Liability

1. any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous conduct;



2. any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

3. wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;

4. false arrest, detention or imprisonment or malicious prosecution;

committed in the gathering, acquisition or obtaining of **matter** by or with permission of the **Insured** during the Policy Period for **multimedia activities** and related **advertising**, regardless of when **claim** is made or suit is brought.

## ii. EXCLUSIONS

The Company shall not be obligated to defend or to pay **damages** or **claim expense** resulting from **claims**:

A. made by any present, former or prospective employee, partner, joint venturer, co-venturer, officer or director of the **Insured** or any independent contractor supplying **matter**, material or services to the **Insured**, but only with respect to **claims** involving disputes over the ownership or exercise of rights in the **matter**, material or services supplied;

B. for or arising from any breach of contract other than liability **assumed under contract;**

C. for or arising from false **advertising** or misrepresentation in **advertising** or for **unfair competition** based thereon, but only as respects intentional, false, misleading, deceptive, fraudulent or misrepresenting statements in **advertising** about the **Insured's** own product or service;

D. for or arising from infringement of patent;

E. for or arising from antitrust, restraint of trade, or unfair or deceptive business practices;

F. for or arising from employer-employee relations or other usual and ordinary business transactions of the **Insured** that do not involve the utterance, dissemination, gathering, acquisition, or obtaining of **matter;**

G. for or arising from any act that a jury or court finds to be dishonest, fraudulent or criminal;

H. for or arising from any actions, decisions, orders or proceedings by the Federal Trade Commission, Federal Communications Commission or any other federal, state, or local governmental agency;

I. for or arising from **bodily injury** or **property damage;**

J. for or arising from the gathering, acquisition, obtaining, utterance or dissemination of **matter** or any act or repetitions thereof committed prior to the effective date of the first policy issued by the Company or after the termination date of the last policy issued by the Company;

K. for or arising from **unfair competition** not directly related to and alleged in conjunction with the types of **claims** specified in Paragraphs 3 and 4 of Coverage Agreement A. Media Liability.

## iii. POLICY LIMIT AND SELF-INSURED RETENTION

### A. Policy Limit

The Policy Limit stated in the Declarations shall be the most the Company will pay for all **damages** and **claim expense** during any one Policy Period, regardless of the number of:

1. **Insureds** under this policy;

2. utterances or disseminations of **matter;**

© 1993 Media/Professional Insurance




3. acts related to the gathering, acquisition, or obtaining of **matter**;

4. multimedia activities;

5. policies issued by the Company;

6. Coverage Agreements;

7. persons or organizations who sustain **damages**; or

8. *claims made or suits brought.*

B. **Self-Insured Retention**

The Self-Insured Retention stated in the Declarations shall be those amounts first incurred and payable by the **Insured** for **each loss**. The Self-Insured Retention applies to both **damages** and **claim expense** or any combination thereof.

*The Policy Limit shall be in excess of the Self-Insured Retention amount stated in the Declarations. The Self-Insured Retention shall not reduce the Policy Limit.*

C. **Application of Policy Limit and Self-Insured Retention to Each Loss**

The Policy Limit and Self-Insured Retention applying to **each loss** shall be the Policy Limit and Self-Insured Retention in effect on the date on which **matter** is first uttered, disseminated, gathered, acquired or obtained.

IV. **EFFECT OF CANCELLATION OR NONRENEWAL ON SCHEDULED MEDIA UNDER CONTRACT**

A. In the event the policy is canceled or nonrenewed by the Company:

1. If the **Insured** has other insurance that applies to a **scheduled media** contracted for during the Policy Period of a policy issued by the Company, this policy excludes coverage for any **claims** arising out of the utterance and dissemination of **matter** in such **scheduled media** or related **advertising** after the cancellation or nonrenewal date of this policy;

2. If the **Insured** does not have other insurance that applies to a **scheduled media** contracted for during the Policy Period of a policy issued by the Company, this policy shall continue to apply to the utterance and dissemination of **matter** in such **scheduled media** and related **advertising** after the cancellation or nonrenewal date of this policy, provided that the Policy Limit and Self-Insured Retention in effect during the Policy Period in which the contract or agreement was executed shall be the Policy Limit and Self-Insured Retention that will apply to any **claims** arising out of such **scheduled media** or related **advertising**.

B. If the policy is canceled or nonrenewed by the **Insured**, the policy excludes **claims** arising out of the utterance and dissemination of **matter** in **scheduled media** or related **advertising** after the cancellation or nonrenewal date.

V. **DEFINITIONS**

"**Additional Insured**" means any agent or independent contractor providing services or **matter** through or under the direction of the **Named Insured** and for which the **Named Insured** agrees in writing prior to **claim** to provide the insurance afforded by this policy. After **claim** is made the **Named Insured** may include any other agent or independent contractor under the policy as an **Additional Insured**, but only with the prior written consent of the Company.

"**Advertising**" means **advertising**, publicity, or promotion of any kind of **multimedia activities** or of the products and services of others.

© 1993 Media/Professional Insurance



"Assumed under contract" means liability assumed by the **Insured** in the form of hold harmless or indemnity agreements executed with any party, but only as respects:

A.   the types of claims specified in the Coverage Agreements; and

B.   matter furnished by the Insured.

Examples of **assumed under contract** are hold harmless or indemnity agreements with advertisers, advertising agencies, publishers, broadcasting companies and networks, cable television systems, authors and other entities distributing **matter**.

"**Bodily Injury**" means **bodily injury**, sickness, or disease, including death resulting therefrom.

"**Claim**" means a demand or a suit for money or services, even if any of the allegations of the **claim** are groundless, false or fraudulent. **Claim** also means a suit seeking injunctive relief relating to the types of **claims** specified in the Coverage Agreements.

"**Claim expense**" means, when authorized and approved by the Company:

A.   fees charged by an attorney in defense of a **claim**, including legal expenses necessitated by a demand for a retraction or correction;

B.   all other fees, costs and expenses which result from the investigation, discovery, adjustment, defense, settlement or appeal of a **claim**;

C.   interest on any part of a judgment not exceeding the Policy limit that accrues after the entry of the judgment and before the Company has paid or tendered or deposited the applicable judgment amount in court; and

D.   premiums on appeal bonds required as a result of a covered **claim** and premiums on bonds to release attachments for a bond amount not exceeding the Policy Limit, but the Company has no obligation to apply for or furnish any such bonds.

"**Claim expense**" does not include salary charges or expenses of regular employees of the **Insured**.

"**Damages**" means all forms of monetary **damages**, including actual **damages**, statutory **damages** and punitive or exemplary **damages**, and legal expense or other costs included as part of a judgment or settlement.

"**Damages**" does not include:

A.   production costs, loss of profits, or the cost of recall, return, reproduction, reprinting or correction of **matter** by the **Insured**, any **Additional Insured** or any indemnitee; or

B.   fines and penalties, including governmental or criminal fines or penalties, or fines and penalties by ASCAP, SESAC, BMI or other music licensing organizations;

or any **claim expense** resulting therefrom.

"**Each loss**" means all **damages** and **claim expense** arising out of utterances or disseminations of **matter** and the gathering, acquisition and obtaining of **matter** on one or more dates during a Policy Period or Periods relating to the same subject, person, or class of persons, regardless of the number of repetitions, alterations, or forms of communication.

"**Insured**" means the **Named Insured** and any **subsidiary**, and each person who is a director, officer, stockholder, partner, trustee or employee thereof, but only while acting within the scope of their duties as such.

"**Matter**" means printed, audio, visual or information content, and the use of such **matter** by others.

© 1993 Media/Professional Insurance

**"Multimedia activities"** means:

A.   the researching, preparation, publication, republication, serialization, production, release, exhibition or distribution of scheduled media;

B.   a broadcast, telecast or cablecast over **scheduled media**; or

C.   the execution of a contract to publish, broadcast, produce or advertise **scheduled media**.

**"Named Insured"** means the person or organization named in the Declarations of the policy.

**"Property Damage"** means:

A.   physical injury to or destruction of tangible property, including the loss of use thereof at any time resulting therefrom; or

B.   loss of use of tangible property which has not been physically injured or destroyed.

**"Scheduled media"** means, when listed in the Declarations or by endorsement, newspapers, newsletters, magazines, books and literary works in any form, monographs, brochures or other types of publications, publishing software, electronically transmitted information and databases, radio and television stations, cable television systems, audio recordings in any form, films, motion pictures and video cassettes, **matter** printed for third parties, music publishing, advertising materials and other materials related directly to such **scheduled media**.

**"Subsidiary"** means any entity that is wholly owned or more than 50% owned and controlled by the **Named Insured**.

**"Unfair competition"** means the misuse of an intellectual property right in **matter**.

## VI. CONDITIONS

### A. Time of Inception; Policy Period

This policy will begin at 12:01 a.m. on the effective date shown in the Declarations. The policy will continue to apply until 12:01 a.m. on the expiration date also shown in the Declarations unless terminated at an earlier date.

### B. Territory

The territory of the policy is worldwide. If judgment is rendered or settlement is made denominated in a currency other than United States of America dollars, payment under this policy shall be made in United States dollars at the rate of exchange prevailing on the date the final judgment is rendered or the amount of the settlement is agreed upon.

### C. Premium

The **Named Insured** shall pay to the Company the annual and minimum premium stated in the Declarations. The premium may be adjusted at any time during the Policy Period or any extensions of the Policy Period based upon additions or deletions of media activities or entities or changes in the provisions of the policy as may be agreed upon by the **Named Insured** and the Company.

### D. Change of Operations

This policy applies only to **scheduled media** described at the effective date of this policy in the Declarations or by endorsement. This policy shall not apply to any additional media or acquired media entities unless, with the Company's consent, such activities or entities are added by endorsement hereto. The **Named Insured** shall promptly pay any additional premium that may become due.

Page 5 of 8

 

E. **Defense; Cooperation of Insured; Settlement**

1. **Insured's Duties in the Event of Claim; Conduct of Defense; Cooperation**

   a. The Named Insured shall give prompt notice to the Company of any covered claim or suit.

   b. The Named Insured will employ counsel, approved by the Company, for defense of such claim or suit as follows:

      (1) The Named Insured shall file proper pleadings in said suit within the time required by law for filing same, keep the Company informed of all developments and send to the Company any documents requested by the Company; and

      (2) If the suit is brought to trial, the Named Insured shall proceed to conduct the defense thereof. The Company, at its own election and expense, shall have the right to associate with the Named Insured in the defense.

   c. The Insured shall in all respects cooperate with the Company with respect to any claim for which insurance is afforded under this policy and, at the Company's request, assist in making settlements and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured. The Insured shall attend hearings and trials, assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured and the Insured's counsel shall comply with any claim guidelines or procedures requested by the Company.

   d. The rights of an Insured under this policy shall not be prejudiced by the refusal of the Named Insured, or of anyone for whose acts the Named Insured is legally liable, to reveal the identity of a confidential source in connection with a claim or suit under the policy.

2. **Settlements and Appeals**

   a. It is understood that the Named Insured may settle any claim for which the total cost of damages and claim expense associated therewith is less than the amount of the remaining Self-Insured Retention. No offer to settle any other claim shall be made or accepted without prior written agreement by the Company.

   b. In the event that the Named Insured and the Company disagree with respect to the final disposition of any claim, the following provisions shall apply:

      (1) If the Named Insured is willing to accept a settlement which is offered by a claimant or is unwilling to appeal from a judgment of a trial court, the Company shall have the right to litigate in lieu of such settlement or appeal from such judgment, provided that the Company bears all costs and expenses, including incidental interest of such litigation or appeal, any new trial ordered by an appeal court and any increase in the judgment amount or final settlement amount. Any increase in the judgment or settlement amount in such instance shall not be applied against the Policy Limit.

      (2) If the Company is willing to accept the judgment of the trial or appellate court or any negotiated settlement or settlement offer and the Named Insured is not willing to accept such judgment or settlement, and providing the judgment or settlement is in excess of the Named Insured's remaining Self-Insured Retention, the Company may tender or pay to the Named Insured the difference between the amount of said settlement or judgment and the Named Insured's remaining Self-Insured Retention, and shall thereby be relieved from further damages as respects said claim.

F. **Retraction or Correction**

The Insured shall take such actions which, in the Insured's judgment, are deemed necessary and practicable to prevent or limit the dissemination of matter that is erroneous or untrue.

© 1993 Media/Professional Insurance

### G. Other Insurance

The insurance afforded by this policy is excess over any other valid and collectible insurance available to the insured, except insurance specifically arranged by the Named Insured to apply in excess of this insurance.

### H. Subrogation

In the event of any payment under this policy, the Company shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization, and the **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing to prejudice such rights. The Company shall have no rights of subrogation against any **Insured** hereunder.

### I. Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed except by written endorsement issued to form a part of this policy.

### J. Assignment

Assignment of any interest or right under this policy shall not bind the Company until its written consent is endorsed hereon.

### K. Action Against the Company

1. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been fully determined either by judgment against the **Insured** after actual trial or by written agreement between the **Insured**, the claimant and the Company.

2. Any person or organization, or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

3. No person or organization shall have any right under this policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Company be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

### L. Cancellation and Nonrenewal

1. **Cancellation**

   This policy may be canceled by the **Named Insured** by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the **Named Insured**, at the address shown in this policy, written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. If cancellation is a result of nonpayment of premium or Self-Insured Retention, the Company shall give written notice stating when, not less than ten days thereafter, such cancellation shall be effective.

   If this policy is canceled prior to the expiration date and the minimum premium does not apply, the premium due the **Named Insured** shall be:

   a. the pro rata unearned amount of the annual premium subject to a factor of .90, if such cancellation is by the **Named Insured**; or

© 1993 Media/Professional Insurance




   b.  the pro rata unearned amount of the annual premium, if such cancellation is by the Company;

but the return of such premium to the **Named Insured** is not a condition of cancellation.

2.  Nonrenewal

   The Company may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the **Named Insured's** last mailing address known to the Company.  The Company will mail or deliver the notice at least 30 days before the expiration of the policy.

If notice of cancellation or nonrenewal is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

## M.  Authorization

The **Named Insured** shall be deemed the agent of all other **Insureds** with respect to selection of counsel, conduct of defense, negotiation of settlements, the decision to appeal or not to appeal any judgment, the payment of the premium and Self-Insured Retention, the giving and receiving of notices of cancellation or nonrenewal, and to receiving any return premium that may become payable under this policy.

## N.  Declarations

By acceptance of this policy, the **Named Insured** agrees that the statements in the Declarations are its agreements and representations, that the policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between itself and the Company or any of its agents relating to this insurance.

In Witness Whereof, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Secretary                                   President

© 1993 Media/Professional Insurance

Endorsement No. 1
Policy No. LS 011424

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TENNESSEE CANCELLATION & NONRENEWAL PROVISIONS

A. The following is added to the CANCELLATION Condition:

CANCELLATION FOR POLICIES IN EFFECT FOR SIXTY (60) DAYS OR MORE

If this policy has been in effect for sixty (60) days or more, or if this policy is a renewal of a policy the Company issued, the Company may cancel this policy only for one or more of the following reasons:

1. Nonpayment of premium, including any additional premium calculated in accordance with our current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

2. Your conviction of a crime increasing any hazard insured against;

3. Discovery of fraud or material misrepresentation on the part of either of the following:

   a. You or your representative in obtaining this insurance; or

   b. You in pursuing a **claim** under this policy;

4. Failure to comply with written loss control recommendations;

5. Material change in the risk which increases the risk of loss after the Company issued or renewed insurance coverage;

6. Determination by the Insurance Commissioner that the continuation of the policy would jeopardize the Company's solvency or would place the Company in violation of the insurance laws of Tennessee or any other state;

7. Your violation or breach of any policy terms or conditions; or

8. Other reasons that are approved by the Insurance Commissioner.

Notice of cancellation will state the reason for cancellation.

B. The following is added and supersedes any provisions to the contrary:

NONRENEWAL

1. If the Company decides not to renew this policy, the Company will mail or deliver written notice of nonrenewal to the **Named Insured** and agent, at least sixty (60) days before the expiration date unless:

   a. The Company has offered to issue a renewal policy; or

   b. You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

2. Any notice of nonrenewal will be mailed or delivered to the **Named Insured's** and agent's addresses shown in the policy. If notice is mailed, proof of mailing will be sufficient proof of notice.

SX-11 4/92

# NATIONAL CASUALTY COMPANY

**ENDORSEMENT NO.** _____ 2 _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 NOON | | |
| LS 011424 | 4 | 1 | 99 | A.M. X | Thomas Nelson, Inc. & Subsidiaries | Media/Professional 24507 |

### AMENDATORY ENDORSEMENT

Sections I. A. and B., **COVERAGE AGREEMENTS,** are amended to provide coverage for:

Claims for conspiracy, RICO, Deceptive and Unfair Trade Practices, fraud, breach of oral or written agreement, tortious interference with business relationships, promissory estoppel and stalking or harassment under criminal statute when raised in connection with a named peril under the COVERAGE AGREEMENTS and arising out of acts related to the gathering or obtaining of matter in multimedia activities and related advertising.

This Endorsement shall also amend Section II. **B, E and G,** as follows:

The Company shall not be obligated to defend or to pay damages or claim expense resulting from claims:

B.    for or arising from any breach of contract other than liability assumed under contract or contractual liability arising out of acts related to gathering or obtaining of matter;

E.    for or arising from antitrust, restraint of trade, or unfair or deceptive business practices, but this section shall not be construed to apply to deceptive or unfair business practices claims that arise out of acts related to gathering or obtaining of matter;

G.    for or arising from any act that a jury or court finds to be dishonest, fraudulent or criminal, but this section shall not be construed to apply to fraud claims arising out of acts related to gathering or obtaining of matter nor criminal claims litigated under anti-stalking or anti-harassment laws;

This endorsement shall only apply with respect to civil actions and shall not apply to criminal actions.

_____    ✓ 6/8/99
AUTHORIZED REPRESENTATIVE                  DATE

UT-3g (3-92)



Endorsement No. 3
Policy No. LS 011424

# National Casualty Company

## ADDITIONAL INSURED ENDORSEMENT

1. _____ CBS, Inc. _____

   is added as an Additional Insured as its interests may appear but only with respect to:

   A. the types of claims specified in the Coverage Agreements, and

   B. matter furnished by the Named Insured.

2. This policy is primary and not excess of or contributory to any other insurance provided for the benefit of or by the Additional Insured.

3. This policy does not apply to:

   A. any claim for or arising from any matter created or furnished by the Additional Insured or any claim which includes allegations or facts indicating actual or alleged independent or direct liability on the part of the Additional Insured; or

   B. any claim by the Additional Insured against any other insured as respects matter.

4. This endorsement shall not operate to increase the Policy Limit.

(Complete below only if this form is issued after the inception date of the policy.)

| Named Insured | | Policy No. | |
|---|---|---|---|
| Endorsement No. | Effective Date of Endorsement | Policy Period | |
| Additional or Return premium: $ _____ x _____ | _____ Short Rate<br>_____ Pro Rate | = $ _____ | AP<br>RP |
| Typing Date | | | |

_AUTHORIZED REPRESENTATIVE_

LS 20 08 (3-93)

© 1993 Media/Professional Insurance



**National Casualty Company**

Endorsement No. 4
Policy No. LS 011424

# REMOVAL OF AGGREGATE LIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

MEDIA SPECIAL PERILS POLICY - MULTIMEDIA COVERAGE
(Claim Expense Within the Policy Limit)

Section III.   **POLICY LIMIT AND SELF-INSURED RETENTION** is hereby deleted in its entirety and is replaced by the following:

## III.  EACH LOSS LIMIT AND SELF-INSURED RETENTION

### A. Each Loss

Regardless of the number of:

1. **Insureds** under this policy;

2. utterances or disseminations of **matter**;

3. acts related to the gathering, acquisition or obtaining of **matter**;

4. **multimedia activities**;

5. policies issued by the Company;

6. Coverage Agreements;

7. persons or organizations who sustain **damages**; or

8. **claims** made or suits brought;

the Company's liability for all **damages** and **claim expense** shall not exceed the Policy Limit, **Each Loss** stated in the Declarations. No aggregate limit shall apply.

### B. Self-Insured Retention

The Self-Insured Retention stated in the Declarations shall be those amounts first incurred and payable by the **Insured** for **each loss**. The Self-Insured Retention applies to both **damages** and **claim expense** or any combination thereof.

The Policy Limit, **Each Loss** shall be in excess of the Self-Insured Retention amount stated in the Declarations. The Self-Insured Retention shall not reduce the Policy Limit, **Each Loss**.

(Complete below only if this form is issued after the inception date of the policy.)

| Named Insured | | Policy No. | |
|---|---|---|---|
| Endorsement No. | Effective Date of Endorsement | Policy Period | |
| Additional or Return premium: $ _____  x _____ | _____ Short Rate<br>_____ Pro Rate | = $ _____ | _____ AP<br>_____ RP |
| Typing Date | | AUTHORIZED REPRESENTATIVE | |

© 1993 Media/Professional Insurance

Endorsement No. 5
Policy No. LS 011424

# National Casualty Company

# ADDITIONAL INSURED ENDORSEMENT

1.   <u>Dream Works, L.L.C., its parents, successors and subsidiaries</u>

is added as an Additional Insured as its interests may appear but only with respect to:

A.  the types of claims specified in the Coverage Agreements, and

B.  matter furnished by the **Named Insured**.

2.  This policy is primary and not excess of or contributory to any other insurance provided for the benefit of or by the **Additional Insured**.

3.  This policy does not apply to:

A.  any **claim** for or arising from any **matter** created or furnished by the **Additional Insured** or any **claim** which includes allegations or facts indicating actual or alleged independent or direct liability on the part of the **Additional Insured; or**

B.  any claim by the **Additional Insured** against any other **Insured** as respects **matter.**

4.  This endorsement shall not operate to increase the Policy Limit.

(Complete below only if this form is issued after the inception date of the policy.)

| Named Insured | | Policy No. | |
|---|---|---|---|
| Endorsement No. | Effective Date of Endorsement | Policy Period | |
| Additional or Return premium: $ _____ x _____ | _____ Short Rate<br>_____ Pro Rate | = $ _____ | ____ AP<br>____ RP |
| Typing Date | | | |

AUTHORIZED REPRESENTATIVE

LS 20 06 (3-93)

© 1993 Media/Professional Insurance

# NATIONAL CASUALTY COMPANY

**ENDORSEMENT NO.** _____ 6

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| LS 011424 | 4 | 1 | 99 | X | | Thomas Nelson, Inc. & **Subsidiaries** | Media/Professional 24507 |

### AUTOMATIC ACQUISITION ENDORSEMENT

The policy shall automatically apply for ninety (90) days to acquisitions or the formation of new multimedia activities, however, if revenues of a new acquisition or formation of new multimedia activities represents more than $25 million of existing multimedia activities, an additional premium may be calculated.

AUTHORIZED REPRESENTATIVE

6/8/99

DATE

UT-3g (3-92)

# NATIONAL CASUALTY COMPANY

**ENDORSEMENT NO.** ?

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | 12:01 A.M. | NOON | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | | | | |
| LS 011424 | 4 | 1 | 99 | X | | Thomas Nelson, Inc. & Subsidiaries | Media/Professional 24507 |

### MERCHANDISING RIGHTS ENDORSEMENT

It is hereby understood and agreed that Part I., **COVERAGE AGREEMENTS**, is amended to include **merchandising rights**.

"Merchandising rights" means the rights to use some popular element of an intellectual property to advertise and promote the sale of commercial products or services. "Merchandising rights" is limited to the popular element of informational content contained in the product and does not include the manufacture or design of the product which carries the popular element.

_____    / 6/8/99

AUTHORIZED REPRESENTATIVE    DATE

UT-3g (3-92)

Endorsement No. 8
Policy No. LS 011424

# NATIONAL CASUALTY COMPANY

## ERRORS & OMISSIONS LIABILITY
## BROAD FORM COVERAGE ENDORSEMENT
## WITH EXCLUSIONS

This endorsement modifies insurance provided under the following:

MEDIA SPECIAL PERILS POLICY (**Claim Expense** Within the Policy Limit)

1.  The following coverage is added:

**CONTINGENT ERRORS AND OMISSIONS LIABILITY (BROAD FORM)**

The Company shall pay on behalf of the **Insured** all **damages** and **claim expense** in excess of the Self-Insured Retention and within the Policy Limit which the **Insured** becomes legally obligated to pay because of liability imposed by law or **assumed under contract** as a result of one or more **claims** arising out of an error, omission, misstatement, misleading statement or misinterpretation in the content of **matter** uttered or disseminated by or with the permission of the **Insured** during the Policy Period in the type of media described in the Declarations or by endorsement, regardless of when **claim** is made or suit is brought.

2.  Exclusion I. under Section II of the policy is amended to read:

I.  for or arising from **bodily injury or property damage**, but this exclusion shall not apply to **bodily injury** or **property damage** arising out of **matter**;

3.  The following exclusions apply only to this endorsement and are in addition to policy exclusions.

The Company shall not be obligated to defend or pay **damages or claim expense** resulting from **claims**:

AA.  for or arising from breach of express warranties or guarantees, or breach of fiduciary relationships, including but not limited to media credits or funds which the **Insured** either collects or holds for another;

BB.  for or arising from violation of any statute or regulation controlling the sale of securities or commodities or the conduct of investment advisers, including the Securities Act of 1993 as amended, the Securities Exchange Act of 1934 as amended, any state Blue Sky or securities law or any similar state or federal statute;

CC.  for or arising from harassment, misconduct or discrimination because of race, creed, color, age, sex, national origin, religion, handicap or marital status;

DD.  for or arising from professional or consulting services that are separate and distinct from the utterance or dissemination of **matter** and are performed for others for a fee;

©1998 Media/Professional Insurance

# National Casualty Company

## ADDITIONAL INSURED ENDORSEMENT

1.  _____ Nest Entertainment _____

    is added as an **Additional Insured** as its interests may appear but only with respect to:

    A.  the types of **claims** specified in the Coverage Agreements, and

    B.  **matter** furnished by the **Named Insured**.

2.  This policy is primary and not excess of or contributory to any other insurance provided for the benefit of or by the **Additional Insured**.

3.  This policy does not apply to:

    A.  any **claim** for or arising from any **matter** created or furnished by the **Additional Insured** or any **claim** which includes allegations or facts indicating actual or alleged independent or direct liability on the part of the **Additional Insured**; or

    B.  any **claim** by the **Additional Insured** against any other **Insured** as respects **matter**.

4.  This endorsement shall not operate to increase the Policy Limit.

(Complete below only if this form is issued after the inception date of the policy.)

| Named Insured<br>Thomas Nelson, Inc. & Subsidiaries | Policy No.<br>LS 011424 |
|---|---|
| Endorsement No.<br>9 | Effective Date of Endorsement<br>8/23/99 | Policy Period<br>4/1/99-2000 |

| Additional or Return premium: $ ___N/A___ x ___N/A___ | Short Rate _____ = $ ___N/A___ ____ AP |
|---|---|
| | Pro Rate _____ ____ RP |

| Typing Date<br>9/9/99 | |
|---|---|
| | AUTHORIZED REPRESENTATIVE |

© 1993 Media/Professional Insurance



**Media/Professional Insurance**

Two Pershing Square, Suite 800
2300 Main Street
Kansas City, Missouri 64108-2404
Telephone: (816) 471-6118
Facsimile: (816) 471-6119
www.mediaprof.com

John Pfannenstiel
Chief Executive Officer

Direct Dial:   (816) 292-7213
john.p@mediaprof.com

PUNITIVE DAMAGES
LETTER OF INTENT

June 8, 1999

Thomas Nelson, Inc. & Subsidiaries
501 Nelson Place
Nashville, Tennessee 37214

RE:  Media Liability Plus Program
     Policy No. LS 011424

Dear Insured:

This will confirm that the word "damages" includes punitive or exemplary
damages.  It also confirms that the Company will not initiate uninsurability
of such damages as a coverage defense.

Sincerely,

John Pfannenstiel
Chief Executive Officer

A division of Media/Professional Insurance Agency, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT CHRISTIAN WOLF | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| vs. | ) | |
| | ) | NO. 00-CIV-1187(JEC) |
| JOHN BENNETT RAMSEY & | ) | |
| PATRICIA PAUGH RAMSEY | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel of record in the foregoing matter a copy of **DEFENDANTS' INITIAL DISCLOSURES** by United States Mail in a properly addressed envelope with adequate postage thereon to:

Evan M. Altman
5901-C Peachtree Dunwoody Road #495
Atlanta, Georgia  30328

Darnay Hoffman
210 West 70th Street
#209
New York, NY  10023

This 17th day of May, 2001.

James C. Rawls